On March 7, 1939, the plaintiff filed executory proceedings on a note of $1,350, dated April 4, 1939, and secured by a chattel mortgage on a certain lot of oil well equipment described therein. Prior to the sale, certain creditors of the defendant, to-wit: Joe Gaunt, C.R. Byrnes, H.J. Jenkins, Estelle Williams, Modisette Adams, Younger Bros., Inc., Johnston Oil Fuel Service Corp., National Gas Cylinder Co., Bradford Lewis, E.L. Sylvia, E.L. Shove, Luther Perkins, L.O. Gentry, B.F. Mangum, J.B. Miley, L.A. Redmond, M.A. Adams, D.J. Judice, Lloyd Eastin, and A.L. Guidroz, came in by intervention and third opposition, "assailing the act of chattel mortgage as an illegal preference, fraudulent and null and void and given to secure a pre-existing debt of Hennington (defendant) at a time when he was wholly insolvent to the knowledge of the creditor, with resulting damage to the intervenors and third opponents."
In their interventions and third oppositions these creditors asked for judgment against defendant for the amount of their respective claims and asked that the chattel mortgage be set aside; that the proceeds of the sale of the mortgaged property be held subject to the further orders of the Court and that they be paid in preference to the plaintiff and ratably among themselves out of the proceeds by reason of the annulment of the aforesaid chattel mortgage. The defendant was joined in these interventions, accepted service *Page 857 
thereof and confessed judgment on the claims of the intervenors.
Orders were signed by the Court directing the sheriff to hold the proceeds of the sale subject to the further orders of the court. The property was sold at public auction on April 19, 1939, for the sum of $1,100, cash, and after deducting costs and charges amounting to $305.70, the sheriff retained in his hands the balance of $794.30.
The plaintiff in foreclosure filed exceptions of no cause and no right of action, pleas of prescription, and exceptions of misjoinder of parties plaintiff and exceptions of inconsistency and vagueness, leveled at the interventions. The exceptions of misjoinder and inconsistency were overruled, but the court maintained the exception of vagueness, and all of the intervenors, except E.L. Sylvia, thereafter filed bills of particulars. The other exceptions and pleas were referred to the merits, and after answer filed, wherein plaintiff in foreclosure denied that Hennington was insolvent on April 4, 1938, when he gave the chattel mortgage attacked herein, or that it had any knowledge of such insolvency if it did in fact exist, and wherein plaintiff claimed the funds held by the sheriff, the case was then taken up and tried. The District Court rendered judgment in favor of plaintiff in foreclosure and against the intervenors, dismissing all of the interventions and third oppositions, sustaining the exceptions of no cause and no right of action with reference to some of the intervenors, sustaining the plea of prescription with reference to some of the others, and holding, in effect, with reference to all that the evidence did not establish the insolvency of Hennington at the time he gave the chattel mortgage and that plaintiff had good reasons to believe that Hennington was not insolvent when the chattel mortgage was given. The intervenors have appealed and plaintiff has answered the appeal.
Before this Court, the only pleas and exceptions still urged by plaintiff are the plea of prescription against some of the intervenors and the exceptions of no cause of action as to the claims of some of the intervenors.
A review of the record shows that in the early part of 1938 the defendant Hennington and his partner, Furse, became financially involved, apparently because of their inability to raise sufficient cash to pay for labor and materials used in their oil well drilling operations in St. Martin Parish. As a result, a suit was filed in that parish against Hennington and Furse by L.A. Redmond, one of the intervenors in the present suit, wherein Redmond claimed that the partnership of Hennington and Furse and the individual members thereof were indebted unto him in the sum of something over $2,700 for labor performed in said drilling operations in January, February and part of March, 1938, by him and by his assignees, M.A. Adams, Lloyd Eastin, Bill Young, Bell Mangum, Thomas Mire, Luther Perkins, R.M. Walker and Otis Gentry. In that suit Redmond alleged that all of these laborers had assigned their claims to him for valuable consideration. All of the drilling equipment was seized in Redmond's suit on these labor claims in March, 1938.
The Standard Oil Field Supply Company, plaintiff herein, intervened in Redmond's suit, alleging that the partnership of Hennington Furse was indebted to it in the sum of $8,953.50, represented by some five chattel mortgage notes, dated in January, 1938, and due at various times within 90 days from that date and secured by chattel mortgage and vendor's lien on some, if not all, of the property which had been seized under these labor claims. The Standard Oil Field Supply Company, in that suit, asked for a separate appraisement of the property on which it had a vendor's lien and chattel mortgage, and recognition of its superior claim on that property.
The suit in St. Martin Parish against Hennington Furse was compromised by the payment of 60% of the laborers' claims, and, according to the preponderance of the testimony, on the promise of Hennington to pay the remaining 40% after he had drilled one or two more wells at another site, in Acadia Parish. The suit was dismissed and the seizure released on April 13, 1938. However, pending the suit and about the time the compromise was made, the agent of the Standard Oil Field Supply Company was on the ground and took an active part in working out the settlement and, at the time of the settlement, secured, on April 4, 1938, from Hennington the chattel mortgage now under attack, to secure a balance due it by Hennington, particularly for a balance due on supplies sold to him which was not secured by the chattel mortgage notes declared *Page 858 
upon in the intervention in the Redmond suit.
After dismissal of the Redmond suit, and release of the seizure, Hennington moved his equipment to Acadia Parish and conducted drilling operations there, with no better success than he had had in St. Martin Parish, and as a result of his continued financial difficulties, he was unable to pay the chattel mortgage which he gave to the Standard Oil Field Supply Company, resulting in the foreclosure suit by plaintiff and the aforesaid interventions and third oppositions.
Some of these intervenors, to-wit: Modisette Adams, Joe Gaunt, J.B. Miley, Younger Brothers, Inc., A.L. Guidroz, E.L. Shove, were not creditors of Hennington until subsequent to the date the chattel mortgage was executed, and consequently have no right to attack this chattel mortgage under the plain provisions of Article 1993 of the Civil Code. The intervenors endeavored to save their interventions from dismissal on the ground that the Standard Oil Field Supply Company applied payments of $1,750 on August 8, 1938, and $2,000 on October 20, 1938, to an old account, whereas these payments should have been applied in payment of this chattel mortgage note, which was then past due. They argue that the chattel mortgage indebtedness was the most onerous of Hennington's debts to plaintiff and that under the provisions of Article 2166 of the Civil Code the aforesaid payments should have been imputed to the satisfaction thereof. In our opinion this contention cannot be sustained for two reasons: (1) The pleadings do not raise this question and the chattel mortgage is not attacked on that ground; and (2) the record, particularly the testimony of H.A. Willrich, bookkeeper for plaintiff company, reveals that Hennington owed the Standard Oil Supply Company for an older debt than the one secured by the chattel mortgage questioned herein, in the amount of $8,953.50 and that this older debt, far in excess of the aforesaid payments, was likewise secured by chattel mortgage on other property of Hennington.
Most of the other claims are for labor and services rendered Hennington in St. Martin Parish between the first of January and the last of March, 1938, to-wit: the claims of C.R. Byrnes, H.J. Jenkins, B.F. Mangum, Luther Perkins, G.J. Judice, L.A. Redmond, L.O. Gentry, Bradford Lewis, M.A. Adams, National Gas Cylinder Co., Johnston Oil Field Service Corp., and part of the claim of Estelle Williams. Against these claims the plea of prescription is leveled on the ground that they arose more than one year prior to the time of filing the interventions therefor. The record shows that some of these claimants filed their interventions on March 28, 1939, three on April 3, 1939, and two in May, 1939. As to the claims in intervention filed in March, 1939, and on April 3, 1939, it seems clear that they were filed within one year of the compromise between Redmond and Hennington Furse wherein Hennington paid 60% of the original claims and promised to pay the remaining 40%, and it seems clear that prescription was interrupted up to April 13, 1938, when the Redmond suit was dismissed. As to the other claims filed in May, 1939, the record shows clearly that Hennington acknowledged these claims, on many occasions, within a year of their filing, so that prescription as to them was also interrupted. We do not feel, therefore, that the plea of prescription is well founded.
The exception of no cause of action leveled against the claims of M.A. Adams, Lloyd Eastin, B.F. Mangum, Luther Perkins and L.O. Gentry is based on the ground that these claims were assigned to Redmond, who filed a suit in St. Martin Parish against Hennington and Furse and that there is nothing in the record to show that the assignment was ever revoked. There is no proof in the record to show that these assignments were ever made, except the allegation in Redmond's petition, in the St. Martin Parish suit, to the effect that they were made. As that suit was compromised and dismissed, we see no reason why these laborers, including Redmond, cannot prosecute their respective claims for the payments due them, particularly in view of the fact that there is no proof in the record of these alleged assignments, and if there were such assignments for the purpose of the other suit, the parties have evidently mutually agreed that the assignments no longer hold good and that each one will now press his individual claim. Moreover, there is surely no disadvantage to plaintiff in this suit by reason of these laborers prosecuting their separate claims in the intervention. In our opinion, the exception of no cause *Page 859 
or right of action should have been overruled.
From the foregoing it appears to us that these claims in intervention, except those that accrued subsequently to the date of execution of the chattel mortgage involved herein, and the Sylvia claim which was properly dismissed for failure to file a bill of particulars, should have been decided strictly on the merits and not on the pleas and exceptions leveled at them. In other words, we feel that if Hennington was insolvent when he gave the chattel mortgage and if plaintiff had knowledge or should have had knowledge of such insolvency, the said claims in intervention should have been allowed and the chattel mortgage declared null and void.
However, on the merits, the trial court failed to find the facts with reference to insolvency to be as alleged by the intervenors and after a careful review of the record, and consideration of intervenors' contentions we are unable to find manifest error in the findings of fact by the trial court on this question. It is very true, as pointed out by intervenors, that the representative of plaintiff company took an active part in the negotiations between Hennington and Furse on the one hand, and Redmond and his assignees on the other hand, which resulted, finally, in the compromise of the St. Martin Parish suit, and no doubt plaintiff company at that time fully realized, through their representative, that Hennington and Furse were unable to meet their payroll and were financially embarrassed. However, we cannot agree with intervenors' contention that this shortage of cash on the part of the drillers was sufficient to place them in the status of insolvency or to justify the conclusion by plaintiff company that they were insolvent. As pointed out by the trial judge, Redmond and his assignee laborers themselves must not have believed Hennington and his partner were insolvent at that time, for if they had so believed they would not have accepted the compromise whereby they received only 60% of what was owing to them and released the drilling rig from seizure and relied on a promise by an insolvent debtor for the remaining 40% of their claims. If these claimants did not believe Hennington to be insolvent, why should plaintiff have thought so? It seems to us that it was very natural on the part of the representative of plaintiff company to secure a chattel mortgage to protect his company's debt in view of the fact that he had full knowledge of Hennington's promise to pay the balance of the labor claims out of what he expected to make from his drilling contracts in Acadia Parish, and his company had received nothing in the compromise settlement. Moreover, as pointed out by the trial court, Hennington had, besides his drilling equipment, at that time, intangible assets in the way of drilling contracts which could well have been far in excess of his liabilities. Counsel for intervenors complains that the trial court estimated the value of these intangible assets far in excess of their value, but basing the estimates made on their probable value as of April 4, 1938, we feel that they are fair, although necessarily speculative. Later events show, of course, that their value was much less than appeared to be the case in April, 1938. In any event, we do not feel that there is any showing in the record that Hennington was insolvent on the date the chattel mortgage was given or that plaintiff had any knowledge or any reason to know that he was insolvent at that time. We must therefore conclude that the judgment should be affirmed on the merits, and it is so ordered.